

# In the Missouri Court of Appeals
# Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| VALLEY PARK PROPERTIES, LLC, | ) | No. ED107602 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF NATURAL | ) | Appeal from the Missouri |
| RESOURCES, | ) | Administrative Hearing Commission |
| and | ) | |
| ST. LOUIS COMPOSTING, INC., | ) | |
| | ) | |
| Respondents. | ) | FILED: July 2, 2019 |

## Introduction

Valley Park Properties, LLC ("Valley Park") appeals from the order by the

Administrative Hearing Commission (the "Commission") dismissing Valley Park's appeal of the

renewal of a permit allowing water discharge onto Valley Park's property. The Commission

dismissed Valley Park's permit appeal as untimely filed. On appeal, Valley Park challenges the

Commission's dismissal, claiming that it timely appealed the permit issued to St. Louis

Composting, Inc. ("St. Louis Composting") by the Missouri Department of Natural Resources

(the "DNR") within thirty-two days of the issuance of the permit. Specifically, Valley Park

posits that although Section 621.250.2[1] provides only thirty days to appeal from a permit

issuance, 10 C.S.R. 20-6.020[2] allows aggrieved parties an additional three days to file an appeal

---

[1] All Section references are to RSMo (2016), unless otherwise noted.
[2] All C.S.R. references are to Mo. Code. Reg. Ann. tit. 10, sec. 20 (as updated through August 2018).

if the permit was mailed. Because 10 C.S.R. 20-6.020 is not in conflict with Section 621.250.2, and because Valley Park timely appealed the issuance of the water-discharge permit within the thirty-three days prescribed by law, the Commission's dismissal of Valley Park's permit appeal erroneously interpreted and applied the law. Further, on remand, we direct the Commission to consider Valley Park's outstanding motion for attorneys' fees. Accordingly, we reverse the Commission's decision and remand for further proceedings.

Factual and Procedural History

St. Louis Composting operates a composting facility. Valley Park owns property immediately west of St. Louis Composting's facility. In 2017, St. Louis Composting applied for a renewal of its permit from the DNR. The permit allows St. Louis Composting to discharge processed wastewater and storm-water runoff in accordance with the effluent limitations and monitoring requirements, as authorized by the Missouri Clean Water Law. See Sections 644.006–.200; Federal Water Pollution Control Act Pub. L. No. 92-500, 86 Stat. 816.

In the application, St. Louis Composting detailed two outfalls for its facility—Outfall 001 and Outfall 002. Each of these outfalls was described as discharging into a "private lake." On August 27, 2018, the DNR issued St. Louis Composting a permit subject to St. Louis Composting's continued compliance with applicable reporting rules and certain permit conditions. In the cover letter, the DNR mentioned:

> If you were adversely affected by this decision, you may be entitled to an appeal before the [Commission] pursuant to 10 C.S.R. 20-1.020 and Sections 644.051.6 and 621.250[.] To appeal, you must file a petition with the [Commission] within thirty days after the date this decision was mailed or the date it was delivered, whichever date was earlier.

Within the permit, the DNR ascribes certain conditions for operation:

> Compliance with all requirements in this permit does not supersede nor remove liability for compliance with other state, city, county, or local ordinances. It is the

2

responsibility of the permittee to know whether or not there are additional ordinances applying to their operation.

. . .

The [DNR] must give public notice of a pending permit or of a new or reissued Missouri State Operating Permit. The public comment period is a length of time not less than thirty (30) days following the date of the public notice, during which interested persons may submit written comments about the proposed permit. . . . The Public Notice period for this operating permit began June 22, 2018, and ended July 23, 2018. No comments were received.

. . .

[Issuance of the Permit does not convey] any property rights of any sort, or exclusive privilege.[3]

The DNR mailed the permit decision to St. Louis Composting.

On September 28, 2018, Valley Park appealed the permit issuance as an adversely affected party. Valley Park claimed that the "private lake" referred to in the permit application is a depressed area of land situated on Valley Park's property. Valley Park further asserted that St. Louis Composting did not seek or receive authorization from Valley Park to discharge water onto Valley Park's property. On October 31, 2018, St. Louis Composting moved to intervene in Valley Park's appeal. Intervention was granted by the Commission on November 1, 2018. The DNR moved to dismiss Valley Park's appeal on the grounds that the appeal was untimely filed. The Commission granted the dismissal, finding Valley Park filed its appeal two days after the period for filing permit appeals had expired. Valley Park now appeals.

Point on Appeal

In its sole point on appeal, Valley Park argues that the Commission erred in dismissing its permit appeal as untimely filed because 10 C.S.R. 20-6.020 provided Valley Park an additional

---

[3] This condition is part of the "Standard Conditions" created by the DNR. Standard Conditions in NPDES permits are pre-established conditions that "must be incorporated in National Pollutant Discharge Elimination System (NPDES) permits. Standard conditions, specified in Title 40 of the *Code of Federal Regulations* (CFR) 122.41 and 122.42, play an important supporting role to effluent limitations, monitoring and reporting requirements, and special conditions because they delineate various legal, administrative, and procedural requirements of the permit. . . . The use of standard conditions helps ensure uniformity and consistency of all NPDES permits issued by authorized states or the U.S. Environmental Protection Agency (EPA) Regional Offices." U.S. ENV'T PROT. AGENCY, EPA'S NPDES PERMIT WRITERS' MANUAL: CHAPTER 10 1 (Sept. 2010), https://www.epa.gov/npdes/npdes-permit-writers-manual.

three days beyond the thirty-day limit established in Section 621.250.2 to file its challenge to the issuance of the permit; thus, Valley Park's appeal was timely.

## Standard of Review

In reviewing the decision of an administrative agency, we review any questions of law and statutory interpretations de novo. Mo. Coal. for the Env't v. Herrmann, 142 S.W.3d 700, 701 (Mo. banc 2004) (per curiam); see Mo. Const. art. V, sec. 18; Section 536.140. We "must correct erroneous interpretations of law." HTH Cos., Inc. v. Mo. Dep't of Labor & Indus. Relations, 154 S.W.3d 358, 361 (Mo. App. E.D. 2004).

## Discussion

Valley Park posits that 10 C.S.R. 20-6.020(6)(C) provides three additional days "for appeals of conditions in issued permits when the service of notice is accomplished by mail." Because the DNR noticed St. Louis Composting's permit via standard mail, Valley Park maintains that its appeal of the water-discharge permit, filed within thirty-two days after the DNR issued the permit, was timely. The DNR and St. Louis Composting counter that Section 621.250.2 mandates that any aggrieved party file the appeal within thirty days of the permit's issuance. This appeal raises the question of law whether the rule and statute are in conflict and, if so, which one governs the appeal process.

## I.     Administrative Rule-Making Procedures

Missouri permits administrative agencies to adopt rules and regulations, pursuant to and in conjunction with existing statutes. See, e.g., Sections 644.026(1), .026(8), .121. The Missouri Clean Water Commission (the "CWC") "is the administrative agency charged with administering, enforcing and promoting the goals of" the Missouri Clean Water Law. Curdt v. Mo. Clean Water Comm'n, 586 S.W.2d 58, 60 (Mo. App. E.D. 1979) (citing Sections 204.021, .026 RSMo (Cum. Supp. 1973)). The Missouri Clean Water Law was enacted to ensure high

4

water quality and a minimum degradation of the waters in Missouri. Section 204.011 RSMo (Cum. Supp. 1973); Curdt, 586 S.W.2d at 59.

Similar to other agencies, the CWC has only those powers that the Missouri Legislature has conferred through statute. Curdt, 586 S.W.2d at 60 (internal citations omitted). Pursuant to the grant of powers in Section 644.026, the CWC may adopt such rules, regulations, and procedures as shall be necessary for effective administration and to meet federal requirements. Sections 644.026(1), .026(8), .121. A rule is "a statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts." State ex rel. Ideker, Inc. v. Garrett, 471 S.W.3d 743, 748 (Mo. App. W.D. 2015) (internal quotations omitted).

Rules promulgated by agencies "are entitled to a presumption of validity and may not be overruled except for weighty reasons." State ex rel. Mo. Pub. Def. Comm'n v. Waters, 370 S.W.3d 592, 602 (Mo. banc 2012) (internal quotation omitted). "Rules and regulations are valid unless unreasonable and plainly inconsistent with the statute under which the regulation was promulgated." Id. (internal quotations omitted). Further, rules are invalid only to the extent that "(1) [t]here is an absence of statutory authority for the rule or any portion thereof; or (2) [t]he rule is in conflict with state law; or (3) [t]he rule is so arbitrary and capricious as to create such substantial inequity as to be unreasonably burdensome on persons affected." Section 536.014. "The burden is upon those challenging the rule to show that it bears no reasonable relationship to the legislative objective. In the absence of such a showing, a rule must be followed until properly and successfully challenged." Waters, 370 S.W.3d at 603 (internal quotations omitted). "Duly promulgated rules of a state administrative agency have the force and effect of law." Killion v. Bank Midwest, N.A., 886 S.W.2d 29, 32 (Mo. App. W.D. 1994) (internal citation omitted).

When reviewing the validity of rules:

5

> [w]e do not look beyond the plain and ordinary meaning of the words used by the governing body unless their meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislation. If the agency's rule is unambiguous on its face, no interpretation is necessary and the court must give effect to the agency's intention as clearly expressed, and even a longstanding interpretation should be disregarded when such interpretation conflicts with the clear language of the rules.

State ex rel. Stewart v. Civil Serv. Comm'n of St. Louis, 120 S.W.3d 279, 287–88 (Mo. App. E.D. 2003) (internal quotations omitted).

## II.      Permits to Discharge Pollutants

The Missouri Clean Water Law requires that any person or entity who discharges pollutants into waters of the United States acquire a permit through the DNR for the discharge to be considered lawful. See Section 644.051; 10 C.S.R. 20-6.010. The DNR, as the permitting administration, reviews the application. If the DNR decides to grant the permit, it must provide a public notice of the permit and "a period of not less than thirty (30) days" for interested parties to submit written views on the proposed permit. 10 C.S.R. 20-6.020(1)(B).

Following the issuance of a permit, an aggrieved person or entity may appeal a DNR permit decision by filing a petition with the Commission. Section 621.250.1. The aggrieved party must follow the time limits for appeals, as governed by statute:

> **Except as otherwise provided by law**, any person or entity who is a party to, or who is aggrieved or adversely affected by, any finding, order, decision, or assessment for which the authority to hear appeals was transferred to the administrative hearing commission in subsection 1 of this section may file a notice of appeal with the administrative hearing commission within thirty days after such finding, order, decision, or assessment is placed in the United Sates mail or within thirty days of any such finding, order, decision, or assessment being delivered, whichever is earlier.

Section 621.250.2 (emphasis added). The burden of proof is then on the DNR to "demonstrate the lawfulness of the finding, order, decision or assessment being appealed[.]" Section 640.012.

6

The issue on appeal focuses on the CWC's promulgation of a rule concerning the time allowed to appeal a permit decision. 10 C.S.R. 20-6.020(5)–(6). The rule states:

(5)      Time Limits for Appeals for Abatement Orders, Permit Denials and Variances.

     (A)      The thirty (30)-day time limit provided for the filing of appeals to the [C]ommission as established by [S]ection 644.056.3, RSMo for appeals of abatement orders; [S]ection 644.051.6, RSMo for appeals from denials of permits; [S]ection 644.061.5, RSMo for appeals from the recommendation to grant or deny variances; and 10 C.S.R. 20-6.060(5) for appeals from the denial of water quality certifications shall be computed from the day of service of the notice of the order or issuance or denial of the variance or denial of the permit or water quality certification, as the case may be.

     (B)      Service of the notice may be accomplished by either hand delivery or certified mail, return receipt requested.

     . . . .

     (C)      The appeals previously referenced in subsection (5)(A) of this rule may be made by the applicant, permittee, person named in the order **or any other person with an interest which is or may be adversely affected**. . . . The appeal shall be a contested case and shall be conducted under [S]ection 644.066, RSMo.

(6)      Time Limits for Appeals of Conditions in Issued Permits.

     (A)      The thirty (30)-day limit provided for the filing of appeals to the [C]ommission established by [S]ections 640.010.1 and 644.051.6, RSMo for appeals of conditions in issued permits shall be computed from the day of service of notice.

     (B)      Service of the notice shall be accomplished by mailing the issued permits, first-class postage prepaid, to the persons listed in parts (5)(B)1.A(I)–(VI) of this rule.

     **(C)**      **Three (3) days shall be added to the prescribed thirty (30)-day period for appeals of conditions in issued permits when the service of notice is accomplished by mail.**

     (D)      The appeals referenced previously in subsection (6)(A) of this rule may be made by the applicant, permittee, or any other person with an interest which is or may be adversely affected. . . .

(7)      Appeals made under sections (5) and (6) of this rule shall conform to the requirements of the [Commission] regulation 1 C.S.R. 15-3.350, effective March 30, 2017.

10 C.S.R. 20-6.020(5)–(7) (emphasis added).

7

Here, Valley Park maintains that the phrase "except as otherwise provided by law" within Section 621.250.2 adds the three days provided in 10 C.S.R. 20-6.020(6)(C) to the thirty-day time period for appeals of a permit. We agree that this statutory phrase indicates the Missouri Legislature's intent to make Section 621.250.2 non-exclusive and allow regulatory expansion of the time period provided by statute.

### III.    Section 621.250.2 is Not Exclusive

The DNR and St. Louis Composting argue that 10 C.S.R. 20-6.020(6) conflicts with Section 621.250.2 and cannot be given legal effect. The DNR and St. Louis Composting seek a determination that Section 621.250 specifically addresses the type of appeal regulated in 10 C.S.R. 20-6.020(6) and as such, invalidates the rule. This argument is unavailing as the DNR and St. Louis Composting misinterpret the phrase "except as otherwise provided by law."

The DNR strenuously argues that the phrase "except as otherwise provided by law" is limited in its application to statutory law, and that no other statute allows an exception to the thirty-day filing requirement of Section 621.250.2. For that reason, the DNR posits that Valley Park is precluded from pursuing its appeal of the water-discharge permit, which all parties agree was filed more than thirty days after the Commission issued the permit to St. Louis Composting.

To read Section 621.250.2 as suggested by the DNR, we must interpret the phrase "except as otherwise provided by law" to exclude agency rules. To do so runs contrary to established principles of administrative law. Cf. Miller v. City of Town & Country, 62 S.W.3d 431, 438 (Mo. App. E.D. 2001) (citing Page Western, Inc. v. Cmty. Fire Prot. Dist. of St. Louis Cty., 636 S.W.2d 65, 68 (Mo. banc 1982)) (determining the validity of a local ordinance but noting, "[r]ules created pursuant to properly delegated authority have the same force and effect as a statute. The rules promulgated by the Department of Conservation thus prescribe law."). Contrary to the DNR's position, administrative rules have the force of law. Section 536.014;

8

Killion, 886 S.W.2d at 32. The legislature did not place an asterisk on the phrase "except as otherwise provided by law" to denote only statutory law.

The DNR cites various authorities for the proposition that "except as otherwise provided by law" means *except as otherwise provided by statute*. We find these authorities of little guidance as they predate the development of administrative law and are significantly distinguishable from the matter before us in various respects. See Kirkwood ex rel. McMahon v. Handlan, 168 S.W. 346, 348 (Mo. App. S.L.D. 1914), cited in Yates v. Casteel, 49 S.W.2d 68, 69 (Mo. 1932) (holding that "except as otherwise provided by law" does not include common-law rules); State ex rel. St. Joseph Lead Co. v. Jones, 192 S.W. 980, 981 (Mo. banc 1917); Oregon Cty. R-IV Sch. Dist. v. LeMon, 739 S.W.2d 553, 557 (Mo. App. S.D. 1987) (referring only to statutory authority and making no reference to administrative rules). Helpful to our analysis is that the Missouri Legislature first delegated rule-making authority with the force of law to the executive branch in 1997. See Sections 536.014, .016 RSMo (2000). In 2005, the Commission first was granted the authority to hear contested administrative appeals from the CWC. See Section 621.250 RSMo (Cum. Supp. 2006). Missouri's case law predating 1997 provides scarce insight regarding the question before us—whether the phrase "except as otherwise provided by law" is inclusive of agency rules and regulations.

Neither the DNR nor St. Louis Composting provides us with authority—nor do we find authority in our own research—suggesting that the phrase "except as otherwise provided by law" is intended to exclude agency rules and regulations. Further, we recognize that if the Missouri Legislature had intended "except as otherwise provided" to apply exclusively to statutes, it would have stated such. See, e.g., Sections 400.9-311(a)–(c) ("[e]xcept as otherwise provided in subsection (d) . . ."), 537.035.4 RSMo (Cum. Supp. 2006) ("[e]xcept as otherwise provided in this section . . ."). By using the phrase "by law," we are left with but one conclusion—that

9

Section 621.250.2 plainly and unambiguously applies to rules in addition to statutes, the Missouri Constitution, and any relevant federal laws. See State ex rel. Stewart, 120 S.W.3d at 287–88 (noting that in analyzing rules, we do not look beyond the plain and ordinary meaning of words unless the rule is ambiguous); cf. Page Western, Inc., 636 S.W.2d at 68 (finding that where a rule is statutorily defined to be an agency's statement implementing, interpreting, or prescribing law or policy, then the rule prescribes law in that "[r]ules duly promulgated pursuant to properly delegated authority have the force and effect of law.").

The evident purpose of the statutory authority granted to agencies to enact rules with the force of law directs us to interpret Section 621.250.2's exception clause to include agency rules. Thus, as a non-exclusive statute, Section 621.250.2 does not facially prohibit the CWC from drafting rules that also address the permit appeals timeline. Accordingly, we next address whether 10 C.S.R. 20-6.020(6) specifically conflicts with Section 621.250.2.

## IV. 10 C.S.R. 20-6.020(6) Does Not Conflict With Section 621.250.2

The purpose of 10 C.S.R. 20-6.020 is to "set[] forth the procedures which the [DNR] will follow in providing opportunity for participation by the public and other governmental agencies during the permit issuing process. This rule clarifies the process. This rule also addresses the procedures for appeals to the [CWC] from departmental actions." 10 C.S.R. 20-6.020.

Section 621.250 transfers the authority to hear contested case administration appeals from the CWC, among other commissions, to the Commission. Section 621.250.1. Section 621.250 pertains to appeals from five total administrative commissions. As such, Section 621.250 generally applies to all types of appeals from the specified commissions. Given the non-exclusivity of Section 621.250, as determined above, parties affected by permits necessarily must look to both rules and statutes to ensure the lawfulness of their actions. See State ex rel. Mo.

10

Pub. Serv. Comm'n v. Joyce, 258 S.W.3d 58, 62 (Mo. banc 2008) (internal citation omitted) (noting that the "except" clause typically prevents conflict); see also Killion, 886 S.W.2d at 32.

10 C.S.R. 20-6.020 contemplates the relevant statutes. Although the CWC did not directly reference Section 621.250.2 in 10 C.S.R. 20-6.020(6), the rule cites to Section 644.051.6, which describes the appeal process to the Commission and the thirty-day appeal time limit. See Section 644.051.6. In turn, Section 644.051.6 directly references Section 621.250 in describing the appeal process:

> As provided by [S]ections 621.250 and 640.013, the applicant may appeal to the [C]ommission from the denial of a permit or from any condition in any permit by filing a petition with the [C]ommission within thirty days of the notice of denial or issuance of the permit. After a final action is taken on a new or reissued general permit, a potential applicant for the general permit who can demonstrate that he or she is or may be adversely affected by any permit term or condition may appeal the terms and conditions of the general permit within thirty days of the department's issuance of the general permit.

Section 644.051.6. The CWC was clearly aware of Section 621.250.2 while drafting 10 C.S.R. 20-6.020. When read under the presumption that 10 C.S.R. 20-6.020 is valid, 10 C.S.R. 20-6.020(6)(C) is not in conflict with Section 621.250.2. See Waters, 370 S.W.3d at 599, 602–03 (noting that regulations are presumed valid to the extent of their enabling statutes, which in turn are read, whenever feasible, as consistent with other statutes and the Constitution).

Further, when read together, neither 10 C.S.R. 20-6.020(6) nor Section 621.250.2 prohibits third parties who are adversely affected by a permit decision from appealing said decision. See Mo. Coal. for the Env't, 142 S.W.3d at 702 (finding that Section 644.051.6 similarly does not restrict permit appeals solely to parties denied a permit, and 10 C.S.R. 20-6.020(5)(C) is not in conflict). 10 C.S.R. 20-6.020(6) merely provides a timing extension for the filing of an appeal. This extension is not prohibited by Section 621.250.2 given its exception clause. See Waters, 370 S.W.3d at 602 (noting that rules are presumptively valid). The thirty-

11

day time limit for appeals established within Section 621.250 is a general, default time period within which appeals must be filed unless a rule, statute, or regulation allows otherwise. Here, the three-day grace period granted to adverse third parties in 10 C.S.R. 20-6.020(6) informs parties that they may exceed the general time period established in Section 621.250 by three days if the DNR mailed the issued permit.[4]

Accordingly, for the reasons stated above, the Commission's decision to dismiss Valley Park's appeal erroneously interpreted and applied the law. See HTH Cos., Inc., 154 S.W.3d at 361 (providing that an administrative decision should be reversed for an erroneous interpretation of law). Because this appeal raises only a question of timing, we need not address the merits of Valley Park's underlying allegations.[5] Point granted.

## V. Attorneys' Fees

Valley Park moves for attorneys' fees pursuant to Section 536.087. "Section 536.087 provides compensation in the form of attorney[s'] fees and reasonable expenses, to a prevailing party in an action against the state or state agency, if the state or agency's position . . . was not substantially justified." Shaw v. Admin. Hearing Comm'n, 537 S.W.3d 881, 884 (Mo. App.

---

[4] Neither the DNR nor St. Louis Composting argues that 10 C.S.R. 20-6.020(6)(C) is "so arbitrary and capricious as to create such substantial inequity as to be unreasonably burdensome on persons affected[.]" Section 536.014; see State ex rel. State v. Riley, 992 S.W.2d 195, 196 (Mo. banc 1999). Nor do we find that, on its face, 10 C.S.R. 20-6.020(6)(C) is any way arbitrary or capricious. Thus, 10 C.S.R. 20-6.020(6)(C) is valid.

[5] The DNR orally argued that 10 C.S.R. 20-6.020 does not apply because it applies only if a party challenges the condition of a permit and, it alleges, Valley Park did not do so here. We find this argument unavailing. Importantly, neither the DNR nor St. Louis Composting raised this issue in their appellate briefs. As such, we are not permitted to review the contention. See Mo. R. Civ. P. Rule 84.04(e) (mandating that the argument be limited to the errors included in the points relied on); Piatt v. Ind. Lumbermen's Mut. Ins. Co., 461 S.W.3d 788, 794 n.4 (Mo. banc 2015).

Even if we were to consider this contention, neither the DNR nor St. Louis Composing provided a definition of "condition" that would exclude Valley Park's complaint. Valley Park, in its underlying action, challenges St. Louis Composting's permit because the "private lake" is located on Valley Park's property and St. Louis Composting did not receive authorization from Valley Park to discharge water into the lake. Valley Park allegedly challenges the following standard condition: "[Issuance of the Permit] does not convey any property rights of any sort, or any exclusive privilege." Although we do not attempt to discern whether Valley Park's claim is successful, its appeal plainly challenges one of the "standard conditions" within the permit. As such, 10 C.S.R. 20-6.020 applies to Valley Park's permit appeal.

W.D. 2018).  Because we are remanding for further proceedings on the merits, the decision is not yet final and all parties are likely to continue incurring attorneys' fees.  See Section 536.087.4; Mo. Real Estate Appraisers Comm'n v. Funk, 492 S.W.3d 586, 593 (Mo. banc 2016) ("Once the proceeding becomes final through an unreviewable decision by a court on appeal, or once the underlying merits of the case are finally determined on appeal, the agency can then determine the attorney's fees awardable, if any[.]").  Thus, the question of attorneys' fees under Section 536.087 is not yet reviewable.  See Shrock v. Gan, 563 S.W.3d 127, 136 n.9 (Mo. App. W.D. 2018) (citing Sections 536.085, .087).  Accordingly, we direct the Commission to consider Valley Park's motion for attorneys' fees and costs after a final decision on the merits.  See Mo. Real Estate Appraisers Comm'n, 492 S.W.3d at 595 n.6.

<u>Conclusion</u>

The order of the Commission is reversed and remanded for further proceedings consistent with this opinion.

_____

KURT S. ODENWALD, Presiding Judge

Colleen Dolan, C.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

13